# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:21-cv-206-FDW
# 3:19-cr-189-FDW-DCK-2

| | |
|---|---|
| **KATELAND DAWN MYERS,** ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | |
| ) | **ORDER** |
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| Respondent. ) | |
| ) | |

**THIS MATTER** is before the Court on Petitioner's *pro se* 28 U.S.C. § 2255 Motion to Vacate Sentence, (Doc. No. 1).

Petitioner was charged along with two co-Defendants in a drug trafficking conspiracy. The charges pertaining to Petitioner are: Count One, conspiracy to distribute and possess with intent to distribute a mixture and substance containing a detectable amount of methamphetamine and methamphetamine (actual), and that 50 grams or more of methamphetamine (actual) was reasonably foreseeable to Petitioner (21 U.S.C. § 841(b)(1)(A)); Count Seven, aiding and abetting in the distribution and possession with intent to distribute five grams or more of methamphetamine (actual) (21 U.S.C. §§ 841(a)(1) and (b)(1)(B), and 18 U.S.C. § 2); and Count Eight, aiding and abetting in the distribution and possession with intent to distribute 50 grams or more of methamphetamine (actual) (21 U.S.C. §§ 841(a)(1) and (b)(1)(A), and 18 U.S.C. § 2). (3:19-cr-189 ("CR"), Doc. No. 16).

Petitioner pleaded guilty to Counts One and Eight pursuant to a written Plea Agreement and admitted that she is, in fact, guilty as charged in those offenses. (CR Doc. No. 49 at 1). The

1

Plea Agreement sets forth Petitioner's sentencing exposure of a minimum term of 10 years' imprisonment and a maximum of life imprisonment for each count. (CR Doc. No. 49 at 2). The Plea Agreement states that: the Court would consider the advisory U.S. Sentencing Guidelines; the Court had not yet determined the sentence; any estimate of the sentence that Petitioner might receive was a prediction rather than a promise; the Court would have the final discretion to impose any sentence up to the statutory maximum and would not be bound by the parties' recommendations or agreements; and Petitioner would not be permitted to withdraw her plea as a result of the sentence imposed. (CR Doc. No. 49 at 2).

The parties agreed to jointly recommend: a base offense level of 36 because the amount of mixture and substance containing methamphetamine that was known or reasonably foreseeable to the Petitioner (including relevant conduct) was approximately 30 kilograms; the parties reserved their right to advocate whether Petitioner should receive a two-level weapon enhancement pursuant to U.S.S.G. § 2D1.1(b)(1) and whether Petitioner is eligible for the safety valve pursuant to 18 U.S.C. § 3553(f) and U.S.S.G. §§ 2D1.1(b)(17) and 5C1.2; and the Government will recommend up to a three-level deduction for acceptance of responsibility, if applicable. (CR Doc. No. 49 at 3). The parties also retained the right to argue their respective positions regarding any other specific offense characteristics, cross-references, special instructions, reductions, enhancements, departures, and adjustments to the offense level, and departures or variances from the applicable guideline range. (CR Doc. No. 49 at 3).

The Petitioner stipulated to the existence of a factual basis to support the guilty plea as set forth in the Factual Basis filed with the Plea Agreement, and agreed that the Factual Basis may be used by the Court, United States Probation Office, and United States without objection for any purpose, including to determine the applicable advisory guideline range or the appropriate

sentence. (CR Doc. No. 49 at 4). The Petitioner agreed that the Factual Basis does not necessarily represent all conduct relevant to sentencing and that the United States may submit a Statement of Relevant Conduct to the Probation Office, and may present additional relevant facts to the Court. (CR Doc. No. 49 at 4). The Plea Agreement sets forth the rights Petitioner was waiving by pleading guilty including an express waiver of Petitioner's right to contest her conviction and sentence in post-conviction motions and on appeal except for claims of ineffective assistance of counsel or prosecutorial misconduct. (CR Doc. No. 49 at 5). The Plea Agreement provides that "[t]here are no agreements, representations, or understandings between the parties in this case, other than those explicitly set forth in this Plea Agreement, or as noticed to the Court during the plea colloquy and contained in writing in a separate document signed by all parties." (Doc. No. 49 at 9).

The Factual Basis that was filed along with the Plea Agreement provides in relevant part:

> From at least as early as October 19, 2018 and continuing on or about March 2, 2019, in Gaston County within the Western District of North Carolina and elsewhere, the defendant, Kateland Dawn MYERS, did knowingly and intentionally conspire and agree with other persons, known and unknown, to distribute and to possess with intent to distribute fifty (50) grams or more of 'actual' methamphetamine, a Schedule II controlled substance.
>
> On or about March 1, 2019 in Gaston County … William Andrew REEL, II, and Kateland Dawn MYERS, aiding and abetting each other, did knowingly and intentionally distribute and possess with intent to distribute a controlled substance, that is, fifty (50) grams or more of methamphetamine (actual), a schedule II controlled substance.

(CR Doc. No. 50 at 1-2) (paragraph numbers omitted).

The Government submitted a Statement of Relevant Conduct to the Probation Office that states in relevant part:

> The Gaston County Police Department (GCPD) and other agencies learned that William Andrew REEL distributed large quantities of methamphetamine in the Gaston County and surrounding areas. In October 2018, agents learned that REEL made trips to the Atlanta, Georgia area for his methamphetamine. Agents learned

3

that Kateland Dawn MYERS, REEL's girlfriend, assisted and participated in REEL's methamphetamine distribution activities.

On November 1, 2018 at approximately 11:34 a.m., deputies with Franklin County Sheriff's Office in Georgia performed a traffic stop on REEL, MYERS, and Michael Shane CARROLL off Interstate 85 southbound heading towards Atlanta in REEL's vehicle…. REEL was the driver, MYERS was in the front seat, and CARROLL was the back seat passenger. REEL and MYERS confirmed their relationship and their residence [in Gaston County]. Deputies subsequently conducted a consensual search of the vehicle.

Deputies seized a black and yellow Dewalt bag from MYERS' floorboard that contained approximately $50,000 in US currency, a **9mm Springfield semi-automatic handgun loaded with seven (7) founds under the rear portion of MYERS' seat.**

Deputies seized in the backseat area a black backpack. The backpack contained a **stolen 9mm Smith and Wesson semi-automatic handgun, two (2) magazines loaded with thirty-two (32) live rounds**, nine (9) suspected Conazempam pills, small clear plastic baggies, a digital scale, a green note ledger, a new package of syringes, a plastic bag, and a First Union bank money bag. Inside the plastic bag, deputies seized multiple different sized plastic baggies and approximately $10,000 in US Currency. Deputies found the key that matched the First Union bank money bag off CARROLL's person. Inside the First Union bank money bag, deputies seized a gallon sized plastic baggie containing suspected methamphetamine, a syringe with suspected liquid methamphetamine, a digital scale with residue, three (3) suspected Oxycodone pills inside two unlabeled pill bottles, and a plastic baggie that contained suspected methamphetamine.

Deputies seized REEL and MYERS' cellular phones. REEL's cellular phone contained incoming and outgoing text messages that show REEL planned to purchase approximately seven (7) kilograms of methamphetamine with the $50,000 seized. **REEL's cellular phone contained several photos taken inside the residence such as photos of a semi-automatic type handgun and a semi-automatic type rifle**; a photo of a large amount of US Currency; and, a photo of seven (7) gallon sized clear plastic baggies that contain suspected methamphetamine. MYERS' cellular phone contained a screenshot entitled 'Informant List.'

…

GCPD on March 2, 2019 detained MYERS at the [Gaston County] residence and executed a search warrant. Law enforcement seized: two (2) cellular phones, a container with a false bottom; digital scales; two (2) drug ledgers; **two (2) handgun magazines and magazine holder**; $982 in US Currency; a security

4

system; a can with false top; a surveillance system; plastic bags; a money counter; a vacuum sealer and bags; and a security monitor.

…

MYERS waived her Miranda rights on March 3, 2019. MYERS stated she met REEL on October 17, 2018 and subsequently moved into REEL's residence. REEL asked her to go on a trip where REEL picked up six (6) or seven (7) kilograms of methamphetamine in Lithonia, Georgia. MEYERS stated that REEL paid $6,000 per kilogram. MYERS described the place as an apartment complex. MYERS stated that REEL loaded the kilograms into REEL's vehicle. MYERS stated that REEL sold out within a day and a half and wanted to go back to Georgia. MYERS said her next trip was in November 2018, which was the time they got arrested. On that trip, MYERS stated REEL had $50,000 in the car and CARROLL had $10,000. **MYERS stated that they did not know CARROLL had the stolen gun, methamphetamine, and the money.** MYERS estimated that REEL made approximately twenty (20) trips to Georgia after their November 2018 arrest.... MYERS estimated from the time she and REEL were together that REEL had bought back at least 30 kilograms of methamphetamine if not more….

Out of everything the Government has regarding the amount of mixture and substance containing a detectable amount of methamphetamine attributable to and reasonably foreseeable by MYERS, the Government submits that any actual methamphetamine seized has been included in the mixture and substance amount provided for a Base Offense Level 36.

(CR Doc. No. 80 at ¶¶ 10-20) (emphasis added).

On February 11, 2020, a United States Magistrate Judge conducted a plea hearing pursuant to Rule 11 at which Petitioner was represented by counsel. (CR Doc. No. 57) (Acceptance). Petitioner stated, under oath, that: she wanted the Court to accept her guilty plea; she understood the charges, her sentencing exposure, and the consequences of pleading guilty; she understood the rights she was waiving by pleading guilty; and she was pleading guilty because she is guilty of the charged offenses. (CR Doc. No. 57 at 1-3). Petitioner further stated that she understood and agreed with the Plea Agreement including the appellate and post-conviction waivers. (CR Doc. No. 57 at 3). She stated that she read the Factual Basis, understood it, and agreed with it. (CR Doc. No. 57 at 3). Petitioner stated that nobody threated, intimidated, or forced her to plead guilty, or made

any promises of leniency or a light sentence to induce her to plead guilty. (CR Doc. No. 57 at 3). Petitioner confirmed that she had enough time to discuss any possible defense with her attorney and was satisfied with counsel's services. (CR Doc. No. 57 at 3).

The Presentence Investigation Report ("PSR") scored the base offense level as 36 pursuant to § 2D1.1(a)(5) because the amount of methamphetamine and methamphetamine (actual) that was known or reasonably foreseeable by Petitioner was at least 15 kilograms but less than 45 kilograms. (CR Doc. No. 80 at ¶ 28). Two levels were added pursuant to § 2D1.1(b)(1) because the offense involved possession of a firearm. (CR Doc. No. 80 at ¶ 29). Three levels were deducted for acceptance of responsibility, resulting in a total offense level of 35. (CR Doc. No. 80 at ¶¶ 35-37). Petitioner had zero criminal history points and a criminal history category of I. (CR Doc. No. 80 at ¶ 43). The resulting advisory guideline range is 168 to 210 months' imprisonment. (CR Doc. No. 80 at ¶ 71).

Defense counsel filed Objections to the PSR which noted that the Petitioner requested a formal in-person Presentence Interview and that one was scheduled with Petitioner, but that it was cancelled due to jail visitation restrictions due to COVID-19. (CR Doc. No. 72 at 1). Because no in-person interview occurred, the parties used the 21 day documentation completed and submitted by Petitioner and followed up with any additional questions or concerns after completion of the documentation. The Probation Officer's work included sending specific questions to defense counsel for Petitioner, in order to gain more information that may have been missing in the 21 day documentation that was completed and submitted by Petitioner. (CR Doc. No. 72 at 1). Counsel received a hard copy of the PSR draft report on April 3 and met with Petitioner to go through it on April 9, 2020. Petitioner indicated the responses and objections to the PSR that she wished to make, and counsel discussed these thoroughly with Petitioner. (CR Doc. No. 72 at 2). Counsel met

6

with Petitioner again on April 14, 2020 to discuss the draft of the Objections to ensure this is how Petitioner wanted to proceed. At the meeting, counsel informed Petitioner what the case law research she had performed and disclosed the strengths and weaknesses that counsel reasonably believed existed regarding the objections that Petitioner desired to make. Petitioner indicated that she understood and wished to proceed with the Objections. (CR Doc. No. 72 at 2).

In the Objections, Petitioner argued *inter alia* that the two-level enhancement for the firearm possession pursuant to § 2D1.1(b)(1) did not apply because she did not actually or constructively possess a firearm and any co-defendant's possession of a firearm in connection with the offense was not reasonably foreseeable to her with regards to the November 1, 2018 traffic stop. (CR Doc. No. 72 at 2-3). Petitioner further argued that she meets the criteria for the safety valve, and that the offense level by two levels pursuant to §§ 5C1.2(a) and 2D1.1(b)(17). (CR Doc. No. 72 at 4). These objections would result in an adjusted offense level of 34 rather than 38; then further reduced to 31 after acceptance of responsibility. (CR Doc. No. 72 at 4).

The United States filed Objections arguing that two levels should be added for maintaining premises for the purpose of distributing a controlled substance pursuant to § 2D1.1(b)(12). (CR Doc. No. 74 at 1). With regards to Petitioner's Objections, the United States argued that the two-level firearm enhancement applies because the preponderance of the evidence demonstrates that the weapon was possessed in connection with drug activity that was part of the same course of conduct or common scheme as the offense of conviction, and Petitioner failed to show that it was clearly improbable that the firearm, found in close proximity to her, was connected to the conspiracy. (CR Doc. No. 74 at 3-4). The United States notes that there is no dispute that: a concealed semi-automatic 9mm pistol was found underneath her seat, readily accessible to her; a concealed loaded semi-automatic 9mm handgun was in a backpack in the backseat; photos on

Reel's cellular phone on November 1, 2018 depicted a different semi-automatic handgun and a semi-automatic rifle; and two handgun magazines were seized along with other items from the March 2, 2019 residential search. (CR Doc. No. 74 at 5). Even if Petitioner never possessed the firearms, Reel's possession of a 9mm handgun and/or the other co-conspirator's possession of a 9mm handgun was reasonably foreseeable to her, and the possession was in furtherance of the conspiracy and reasonably foreseeable to Petitioner. (Id.). With regards to the safety valve, the United States argued that Petitioner cannot establish that she is entitled to the two-level reduction in offense level because she cannot establish by a preponderance of the evidence that it is clearly improbable that the handguns were not connected with the charged conspiracy. (CR Doc. No. 74 at 6).

Defense counsel objected to the Government's request for a two-level enhancement for maintaining a premises for the purpose of distributing a controlled substance pursuant to § 2D1.1(b)(12), arguing that case law that the Government cited about "maintaining" a premises has not been adopted in the Fourth Circuit, and that the enhancement's application requires a fact-based analysis by the Court on a case-by-case basis. (CR Doc. No. 79). With regards to the firearm enhancement, counsel argued that Petitioner's case is factually different from the cases discussed in the Government's response and, even if the two-level enhancement were applied, Petitioner should still receive a safety valve reduction.

Defense counsel filed a Sentencing Memorandum requesting a downward departure and/or variance, reiterating Petitioner's prior arguments and further arguing that a variance from the advisory guideline range is appropriate because of factors including her family circumstances, abusive relationship with Reel, lack of criminal history, and rehabilitative efforts. (CR Doc. No. 82).

The Court found that the enhancement for maintaining a premises for the purpose of manufacturing or distributing a controlled substance applies, as Petitioner held a possessory interest in dominion and control of the property and used the property for continued drug trafficking. See (CR Doc. No. 91) (Statement of Reasons). The Court overruled Petitioner's objection for possession of a firearm because the co-Defendants' possession of firearms during the conspiracy was not clearly improbable. (Id.). The Court sustained Petitioner's safety valve argument, to which the Government conceded. (Id.). These adjustments did not affect the advisory guideline range. (Id.). However, the Court granted the defense motion for a downward variance, over the Government's objection, reducing the total offense level of 34 and resulting in a guideline imprisonment range of 151 to 188 months' imprisonment. (Id.).

In a Judgment entered on September 10, 2020, the Court sentenced Petitioner at the bottom of the reduced advisory range to 151 months' imprisonment followed by five years of supervised release. (CR Doc. No. 90). Petitioner did not appeal.

Petitioner timely filed the instant § 2255 Motion to Vacate. (Doc. No. 1). She argues that counsel was ineffective:[1] (1) during "critical proceedings" due to COVID-19; (2) with regards to sentencing; and (3) for failing to consult with Petitioner about a direct appeal. As relief, Petitioner asks for new counsel or a sentence reduction to 10 years' imprisonment or less.

## II.   SECTION 2255 STANDARD OF REVIEW

A federal prisoner claiming that her "sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to

---

[1] These claims are restated and renumbered.

collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970). The Court also determines that no response from the Government is required.

### III. DISCUSSION

The Sixth Amendment to the U.S. Constitution guarantees that, in all criminal prosecutions, the accused has the right to the assistance of counsel for her defense. See U.S. Const. Amend. VI. To show ineffective assistance of counsel, Petitioner must first establish deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). The deficiency prong turns on whether "counsel's representation fell below an objective standard of reasonableness ... under prevailing professional norms." Id. at 688. A reviewing court "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S. at 689).

First, Petitioner contends that counsel was ineffective because there was very limited contact between Petitioner and counsel due to COVID-19. Petitioner claims that, as a result, "critical questions and information that counsel failed to provide which ultimately allowed the court to sentence Myers to a sentence of 151 months in prison." (Doc. No. 1 at 14). Petitioner

10

contends that the outcome of the criminal proceeding would have been different had counsel provided ineffective assistance throughout the pandemic.

This claim is too vague and conclusory to support relief. Petitioner suggests that her meetings with counsel were limited due to COVID-19, however counsel is not required to meet with a criminal defendant any particular number of times to provide effective assistance. Petitioner refers vaguely to critical questions and information that counsel failed to address, but Petitioner does not state what these issues were, or identify any particular actions or inactions by counsel that were outside the range of reasonable performance. See United States v. Dyess, 730 F.3d 354, 359 (4th Cir. 2013) ("vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the district court."). Petitioner's claim of prejudice is also vague and conclusory. She alleges that the outcome of the proceeding would have been different with effective performance, but she does not state how counsel's allegedly deficient performance during COVID-19 affected the outcome of the criminal proceeding in any way.

Moreover, to the extent that the Petitioner alleges that counsel performed deficiently prior to the entry of Petitioner's guilty plea, such claims are waived. A knowing and voluntary guilty plea waives any "independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Blackledge v. Perry, 417 U.S. 21, 29-30 (1974). A defendant who pleads guilty is limited "to attacks on the voluntary and intelligent nature of the guilty plea, through proof that the advice received from counsel was not within the range of competence demanded of attorneys in criminal cases." Id.

The record reveals that Petitioner pleaded guilty knowingly and voluntarily with a full understanding of her plea's direct consequences. The Magistrate Judge conducted a thorough Rule 11 colloquy and concluded that Petitioner understood the charge, her sentencing exposure, and the

rights she was waiving by pleading guilty. Petitioner stated that she was pleading guilty because she is guilty, that she was satisfied with counsel's services, and that she was not promised anything or coerced to enter a guilty plea. Moreover, Petitioner does not appear to assert that counsel's allegedly deficient performance during COVID-19 rendered the plea involuntary, and any such suggestion is facially insufficient because the Petitioner fails to allege that she would have proceeded to trial but for any allegedly deficient performance by counsel. Moreover, any such claim is refuted by Petitioner's statements at the Rule 11 hearing that her plea was knowingly and voluntarily entered and that she was satisfied with counsel's performance. See (CR Doc. No. 57 at 2-3). Petitioner's allegations of ineffective assistance due to COVID-19 are therefore waived, insufficient to support relief, and meritless.

Second, Petitioner contends that counsel was ineffective with regards to sentencing. When applying the Strickland prejudice test in the context of sentencing, "any amount of actual jail time has Sixth Amendment significance." Glover v. United States, 531 U.S. 198, 203 (4th Cir. 2001). Petitioner contends that: counsel failed to adequately consult with Petitioner about the PSR and its findings; counsel failed to object to enhancements for maintaining a premises for selling drugs and the gun enhancement; counsel failed to object to the drug quantity that was reasonably foreseeable to Petitioner; Petitioner never spoke to the Probation officer before sentencing; and counsel told Petitioner to answer affirmatively when the Court questioned her "about alleged statements regarding [Petitioner's] case." (Doc. No. 1 at 7). These arguments will be addressed in turn.

Petitioner's contention that counsel failed to adequately consult with her about the PSR and its findings is too vague and conclusory to support relief. Petitioner fails to identify any PSR issues that counsel inadequately discussed with her. Nor does Petitioner explain how additional discussion had a reasonable probability of resulting in a lower sentence. Dyess, 730 F.3d at 359.

12

Petitioner's contention that counsel failed to object to the two-level enhancements for a firearm and maintaining a premises for drugs is conclusively refuted by the record. Counsel filed Objections and a Sentencing Memorandum objecting to these enhancements in detail. (CR Doc. Nos. 72, 79, 82). The fact that the Court ultimately disagreed with counsel's position does not mean that counsel performed deficiently. Rather, these enhancements were supported by the Statement of Relevant Conduct and applicable case law. See generally (CR Doc. No. 74). Petitioner has failed to identify any evidence or argument that reasonable counsel would have presented which had a reasonable probability of resulting in a lower sentence. Dyess, 730 F.3d at 359.

With regards to drug quantity, the PSR scored the base offense level as 36 because the amount of methamphetamine that was reasonably foreseeable to Petitioner was at least 15 but less than 46 kilograms. (CR Doc. No. 80 at ¶ 28). This is the same drug quantity and base offense level that was included in the Plea Agreement that Petitioner voluntarily entered into. (CR Doc. No. 49). Counsel cannot be deemed ineffective for failing to make a frivolous objection to the drug amount and base offense level to which Petitioner knowingly and voluntarily agreed. See generally Lockhart v. Fretwell, 506 U.S. 364, 374 (1993) (a defendant is not prejudiced if his counsel fails to make an objection that is "wholly meritless under current governing law").

Next, Petitioner complains that she never spoke to the Probation Officer before sentencing. The PSR Objections note that a meeting between Petitioner and the Probation Officer was requested and scheduled, but that the meeting was cancelled due to COVID-19 restrictions at the prison. (CR Doc. No. 72). The parties then engaged in written communications for purposes of the PSR and counsel consulted with Petitioner about the PSR and any objections. (Id.). Petitioner fails to explain how the cancellation of an in-person meeting with the Probation Officer due to COVID-

19 was attributable to counsel, how the alternative written procedure was inadequate, or what more or different actions reasonable counsel would have taken under these circumstances. Nor does Petitioner allege how the foregoing procedure prejudiced her in any way.

Petitioner further contends that counsel told Petitioner to answer affirmatively when the Court questioned her about "alleged statements regarding [the] case." This allegation is too vague and conclusory to support relief in that Petitioner fails to identify the statements at issue, explain how counsel's advice was outside the range of reasonable representation, or how this prejudiced her in any way. Dyess, 730 F.3d at 359. Petitioner's claims about counsel's alleged ineffective assistance with regards to sentencing are too vague and conclusory to support relief and/or are conclusively refuted by the record. Therefore, these claims will be denied.

Finally, Petitioner contends that counsel was ineffective for failing to adequately consult with her about filing a direct appeal. She argues that counsel's failure to discuss the advantages and disadvantages of appealing denied Petitioner the right to an appeal in the Fourth Circuit and a certiorari petition in the Supreme Court. Strickland applies in the context of appellate representation. Counsel must file a notice of appeal when instructed by the client to do so. Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000). Even if a client does not expressly request an appeal, "counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds to appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Id. at 480; United States v. Cooper, 617 F.3d 307 (4th Cir. 2010). Dereliction of either of these duties constitutes deficient performance. See Flores-Ortega, 528 U.S. 477, 480; Cooper, 617 F.3d at 313. A defendant establishes prejudice by demonstrating a reasonable probability that he would have filed an appeal "but for" counsel's

failure to file or consult. Flores-Ortega, 528 U.S. 484.

Petitioner does not allege that she directed her lawyer to file a direct appeal on her behalf or that she expressed an interest in appealing. Therefore, the only question is whether a rational defendant would have wanted to appeal such that counsel had a duty to consult with Petitioner about appealing. The record reveals that counsel had no duty to consult with Petitioner about appealing because a rational defendant in Petitioner's circumstances would not want to appeal. Petitioner's beneficial Plea Agreement resulted in the dismissal of a drug trafficking count and a three-level reduction in the offense level for acceptance of responsibility. The Plea Agreement allowed counsel to seek a safety valve reduction and a downward variance sentence, both of which were successful, and resulted in a sentence of just 151 months' imprisonment. Petitioner's Plea Agreement contained a knowing and voluntary waiver of her appellate rights except for claims of ineffective assistance of counsel and prosecutorial misconduct. Petitioner has not set forth any reason that a rational defendant would have wanted to appeal under these circumstances, such as the existence of nonfrivolous grounds for appeal. Indeed, the only potential claims that Petitioner has identified in the instant proceeding are sentencing guideline application claims which are not nonfrivolous and would have been barred by the appellate waiver had Petitioner attempted to raise them on direct appeal. Counsel was not ineffective for failing to consult with Petitioner about appealing under these circumstances, accordingly, this claim is denied.

IV. **CONCLUSION**

For the foregoing reasons, the § 2255 Motion to Vacate is dismissed with prejudice and denied.

**IT IS, THEREFORE, ORDERED** that:

15

1. Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1), is **DISMISSED** with prejudice and **DENIED**.

2. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

3. The Clerk is instructed to close this case.

Signed: May 27, 2021

Frank D. Whitney
United States District Judge